**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| **ANNETTE L. WILLIAMS,** | * |
| Plaintiff, | * |
| v. | * Case No.: PWG 21-cv-0730 |
| **EDWARD S. COHN,** *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Annette L. Williams, Trustee of the Harry R. Williams Revocable Trust, through counsel, filed this lawsuit on March 22, 2021 against the following Defendants: Edward S. Cohn; Cohn, Goldberg & Deutsch, LLC; Federal National Mortgage Association ("Fannie Mae"); Seattle Mortgage Company; Bank of America, N.A.; Reverse Mortgage Solutions; Academy Mortgage (d/b/a/ Reverse Mortgage Answers); Nancy J. Kopp, Maryland State Treasurer's Office; Board of Calvert County Commissioners; Calvert County Sheriff's Office; Renee J. Lafayette, Esq.; Lafayette Law Office; Burke Realty, LLC; Joseph DiPietro; Diane Vest; Scott Cuthbert; Belinda J. Fadlelmola; Connie Osman; APC Realty and Equipment Company; and Does 1 through 100. Compl., ECF No. 1.[1]  Ms. Williams alleged six causes of action related to the foreclosure of the property located at 5221 Cherry Hill Road, Huntingtown, Maryland (the "Property"). *Id.* Ms. Williams Amended Complaint removed defendants Nancy K. Kopp, Board of Calvert County Commissioners, Calvert County Sheriff's Office, Burke Realty, LLC, Belinda J. Fadlelmola, and

---

[1] Ms. Williams' motion for leave to proceed *in forma pauperis*, pursuant to 28 U.S.C. § 1915(a), was granted on April 1, 2021.  ECF No. 7.

Connie Osman, and added defendant Marcia Fudge, Secretary, Housing and Urban Development ("HUD"). ECF No 13. By her Second Amended Complaint, Ms. Williams also removed APC Realty and Equipment Company as a Defendant. ECF No. 18. The Third Amended Complaint, the operative complaint, was filed on October 14, 2021, and purports to allege seven causes of action against the remaining Defendants: Edward Cohn; Cohn, Goldberg & Deutsch, LLC; Orlans, P.C.; Fannie Mae; Seattle Mortgage Company; Bank of America, N.A.; Reverse Mortgage Solutions; Academy Mortgage (d/b/a/ Reverse Mortgage Answers); Renee J. Lafayette, Esq.; Lafayette Law Office; Joseph DiPietro; Diane Vest; Scott Cuthbert; Marcia Fudge; and Does 1 through 100.[2] ECF No. 53. The Defendants seek dismissal on various grounds, including statute of limitations, *res judicata*, and failure to state a claim. I have reviewed the filings[3] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated below, Defendants' motions are GRANTED.

**BACKGROUND[4]**

In April 1967, Plaintiff's parents, Harry R. Williams and his wife Elaine Williams, purchased 20 acres of real property located at 5221 Cherry Hill Road, Huntingtown, Calvert

---

[2]  Defendants Seattle Mortgage Company, Academy Mortgage, LLC, Joseph DiPietro, and Marcia Fudge have not entered an appearance. Mr. DiPietro waived service of summons, ECF No. 23. Marcia Fudge, Secretary of HUD, was served on July 20, 2021. ECF No. 21-1. There is no record of Seattle Mortgage Company or Academy Mortgage, LLC having been served. Academy Mortgage LLC was dissolved on November 12, 2015, but Reverse Mortgage Answers has appeared asserting it is not a proper party and is not a d/b/a. *See* RMA Mot., ECF No. 58; RMA Mot. Ex. A, Articles of Cancellation, ECF No. 58-2. Additionally, Scott Cuthbert appeared *pro se* and filed a motion to dismiss, which was denied. *See* ECF Nos. 24, 25. He then filed a Notice of intent to file a motion, ECF No. 46, after which the Court granted Plaintiff's request to file an amended complaint. ECF No. 48. All Defendants were given permission to file motions after the amended complaint was filed, *id.*, but Mr. Cuthbert failed to do so. However, it is not clear from the record whether Mr. Cuthbert received my Order.
[3]  Motions (ECF Nos. 58, 62, 64, 66, 67); Responses in Opposition (ECF Nos. 74-78); Replies (ECF Nos. 81-85); Third Amended Complaint, ECF No. 53; and multiple accompanying exhibits.
[4]  For purposes of considering a motion to dismiss, this Court accepts the facts that Plaintiff alleged in her complaint as true. *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011). Multiple exhibits were attached to the Third Amended Complaint. *See* ECF No. 53-2. I note that where the allegations in the

County, Maryland.  Third Am. Compl. ¶ 49.  The Williams lived on the property as their primary residence and rented out a second house that was on the Property. *Id.* After his wife's death, Mr. Williams remarried in 1988. *Id.* But after discovering that Mr. Williams was living alone, Plaintiff began living on the Property on April 27, 1997.  Third Am. Compl. Ex. 2, Pl.'s Aff. ¶¶ 3-4, ECF No. 53-2.  In September 1997, Mr. Williams was critically injured in a car accident, sustained a traumatic brain injury, and became permanently disabled.  Third Am. Compl. ¶ 49.  Plaintiff alleges that Mr. Williams second wife ("Audrey"), after having spent Mr. Williams' money, put him in a nursing home after the accident, where he was given hallucinatory medications that left him confused and vulnerable.  Pl.'s Aff. ¶¶ 16-22. While he was at the home, Audrey filed for guardianship of the Property in November 1997, getting two Physician's Certificates indicating he had a cerebral contusion due to head trauma, a severe disability, and mental deficits.  *Id.* ¶ 25; Exs. 4, 5, Physician's Certificates.

Plaintiff filed multiple complaints related to her father's care, and he was ultimately taken off the hallucinogenic medications. Pl.'s Aff. ¶¶ 22-23.  After being taken off the medications, on December 3, 1997, Mr. Williams signed a power of attorney for Plaintiff to act on his behalf. *Id.* ¶ 23; Ex. 3, Power of Att'y.  Later in December, Mr. Williams was discharged, and he returned home.  Pl.'s Aff. ¶ 24.  Plaintiff notes that Mr. Williams' discharge papers did not include any comments related to a need for ongoing observation or follow-up care related to head trauma or mental deficits.  *Id.* ¶ 25. Mr. Williams' primary care physician found him to be mentally

---

complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011).

3

competent, and Mr. Williams and Plaintiff were successful in getting Audrey's petition for guardianship of the Property dismissed. *Id.* ¶ 26.[5]

On February 10, 2000, after divorcing Audrey, Mr. Williams encumbered the Property to secure a home equity loan with Farmers Bank of Maryland for $79,986.95. Third Am. Compl. ¶¶ 49-50. The monthly payments were over $800, and the entire Property was encumbered by the loan. *Id.* ¶ 50. On January 2, 2001, Mr. Williams entered into a lease agreement with APC Realty and Equipment Company, LLC ("APC") to place a cell tower on the Property, which was completed in 2002 and greatly increased the value of the Property. *Id.* ¶ 51.[6] First Virginia Bank purchased the home equity loan from Farmers Bank and threatened foreclosure when Mr. Williams defaulted on the loan. Pl.'s Aff. ¶ 44; Ex. 8, First Virginia Jan. 28, 2003 Letter. Mr. Williams then sought a reverse mortgage through Academy Mortgage. Pl.'s Aff. ¶¶ 44-46.

On August 7, 2003, Mr. Williams entered into a reverse mortgage on the Property with Academy Mortgage for a maximum principal amount of $404,700. Third Am. Compl. ¶ 52.[7] The Deed of Trust encumbered the entire 20 acres of the Property, although Plaintiff alleges that the underwriting guidelines allowed for no more than the residence and 5 acres to be encumbered. *See* Third Am. Compl. at ¶¶ 137-38, 163; Pl.'s Aff. ¶¶ 49, 52-54; Ex. 10, Academy Mortgage Pamphlet. Plaintiff alleges that Mr. Williams was under heavy medication and had mental problems related to his accident that "made him incapable and lacking in legal competency to sign the closing papers." Third Am. Compl. ¶ 52; Pl.'s Aff. 48-49, 53. Plaintiff was involved in the

---

[5] Plaintiff notes however, that she saw many "red flags signaling his declining mental cognition," including memory loss, attention problems, emotional outbursts and seizures. Pl.'s Aff. ¶¶ 28-32. It was later determined that he had suffered severe trauma to his spinal cord from the 1997 accident, which left him suffering from chronic pain for which he took painkiller medication. *Id.* ¶¶ 34-40.

[6] Plaintiff notes that STC Three, LLC is the successor in interest in the Lease Agreement. Third. Am. Compl. ¶ 51 n.2; Ex. 1.

[7] Defendant Joseph DiPietro prepared the initial appraisal of the Property at the direction of Academy Mortgage. Third Am. Compl. ¶ 38.

4

loan application process and was with Mr. Williams when he signed the loan documents, but she alleges that she told Mr. Williams to not sign anything. Pl.'s Aff. ¶¶ 44, 49, 53, 55-56. Plaintiff alleges that Academy Mortgage sold Mr. Williams the reverse mortgage knowing that the Property did not qualify and knowing that it could not be repaid, and it improperly collateralized all 20 acres of the Property. Third Am. Compl. ¶¶ 59, 61.

On February 24, 2004, Mr. Williams established the Harry R. Williams Revocable Trust, which included the Property among the assets. Third Am. Compl. ¶¶ 6, 53. The Trust was amended in 2009, naming Mr. Williams and Plaintiff as Co-Trustees. *Id.* ¶ 53. On Mr. Williams' death on December 10, 2012, Plaintiff became sole trustee of the Harry R. Williams Revocable Trust. *Id.* ¶¶ 53-54. On January 15, 2013, after learning of Mr. Williams' death, the holder of the loan on the Property called the note due and payable. *Id.* ¶ 84.

The holder of the loan at that time was Reverse Mortgage Solutions ("RMS"). *Id.* On recordation of the deed of trust in September 2003, Academy Mortgage had assigned the reverse mortgage to Seattle Mortgage Company. Third Am. Compl. ¶ 21; Academy Assignment, ECF No. 67-3. Seattle Mortgage Company assigned the reverse mortgage to Bank of America, N.A. ("BOA"). Third Am. Compl. ¶ 24; Seattle Assignment, ECF No. 67-4. And in 2012, BOA assigned the reverse mortgage to RMS. Third Am. Compl. ¶ 28; BOA Assignment, ECF No. 67-5. RMS called the note due and initiated foreclosure proceedings on the property. Third Am. Compl. ¶¶ 32, 84.[8] It appointed Cohn, Goldberg & Deutsch, LLC as substitute trustees for the purpose of the litigating the foreclosure. *Id.* ¶¶ 32, 107. During the process, Plaintiff challenged multiple issues with the paperwork involved in the multiple assignments as well as with the

---

[8] Reverse Mortgage Solutions was the servicer for Federal Housing Administration Real Estate Mortgage Investment Conduit ("FHA REMIC") trust at the time of the foreclosure. Third Am. Compl. ¶ 33.

5

appraisals conducted, but all Plaintiff's motions and appeals were denied and/or dismissed. *See* Foreclosure Docket, ECF Nos. 62-2, 64-2, 67-7; Third Am. Compl. ¶¶ 58, 71-82, 97-99, 102.

The foreclosure was instituted in the Circuit Court for Calvert County on February 28, 2014. Third Am. Compl. ¶ 55. Plaintiff filed for Chapter 13 Bankruptcy on January 16, 2015.[9] *Id.* ¶ 56. After the automatic stay was lifted, Edward Cohn, Substitute Trustees at Cohn Goldberg & Deutch, proceeded with the foreclosure. *Id.* Plaintiff then filed a federal lawsuit in this Court[10] as well as four other Chapter 13 bankruptcy cases[11] in an unsuccessful attempt to save the Property from foreclosure. *Id.* All cases are now closed. *Id.* The Property was sold at auction on August 26, 2016, judgment awarding possession to Fannie Mae was entered on July 19, 2017, and Plaintiff was evicted from the Property on December 8, 2017. *Id.* ¶ 57. The final Order Ratifying Auditor's Report was entered on March 23, 2018. *Id.* ¶ 58. Although Plaintiff appealed the Circuit Court's denial of her dismissal motion to the Maryland Court of Special Appeals, the denial was affirmed, and the mandate issued on June 4, 2018. *Id.* Fannie Mae, who acquired the Property at the foreclosure auction, sold it on September 13, 2019 to Global Signal Acquisitions IV LLC, who

---

[9] *In re Williams*, Case No. 15-10677 (Bankr. D. Md. Jan. 16, 2015). This case was dismissed on May 9, 2017, for failure to make required plan payments. *See* BOA Mot. Ex. J, Docket Report of Bankruptcy Cases, ECF No. 67-11.

[10] *Annette L. Williams v. Edward S. Cohn, et al.* was dismissed without prejudice in November 2016 after Plaintiff's Emergency Motion for Temporary Restraining Order and Permanent Injunction was denied in August 2016, and mail to Ms. Williams was returned undeliverable. *See* ECF Nos. 4 and 10 in Case No. 16-cv-2886-PX.

[11] *In re Williams*, Case No. 18-17945 (Bankr. D. Md. Jun. 12, 2018), was dismissed on October 12, 2018, for failure to complete required filings; Case No. 18-24904 (Bankr. D. Md. Nov. 9, 2018), was dismissed on March 27, 2019, for failure to pay required court fees and charges; Case No. 19-16227 (Bankr. D. Md. May 7, 2019), was dismissed on June 13, 2019, for failure to make required filings; and Case No. 19-19289 (Bankr. D. Md. Jul. 9, 2019), was dismissed on August 20, 2019, for failure to make required filings, appealed to this Court, Case No. 19-cv-2725-PWG (D. Md. Sep. 16, 2019), and dismissed on September 1, 2020, for failure to show cause why plaintiff failed to comply with Rule 8009. *See* Docket Report of Bankruptcy Cases.

then resold it to Langston Reid on December 8, 2020.  *See* BOA Mot. Exs. G, H, Warranty Deeds, ECF Nos. 67-8, 67-9.

Plaintiff filed this case on March 22, 2021, purporting to allege seven causes of action, apparently against all Defendants:

- Count I – Declaratory Relief
- Count II – Constructive Fraud, Quiet Title, Reformation
- Count III – TILA, Federal Home Equity Conversion Mortgage Statute "HECM", Fair Debt Collection Practices Act "FDCPA", 15 U.S.C. 1692, *et al.*, Maryland Consumer Protection Act
- Count IV – Slander of Title
- Count V – Consumer Credit Protection Act
- Count VI – Rescission
- Count [VII][12] - Breach

Defendants have filed five motions to dismiss:  (1) Motion to Dismiss Plaintiff's Third Amended Complaint or, in the Alternative, for Summary Judgment by Defendant Reverse Mortgage Answers, LLC ("RMA Mot."), ECF No. 58; (2) Defendants Edward S. Cohn, *et al.*, Substitute Trustees, Cohn, Goldberg & Deutsch, LC, Appraiser Diane Vest, Renee Lafayette, and Lafayette Law Office, LLC's Motion to Dismiss Third Amended Complaint ("Cohn Mot."), ECF No. 62; (3) Defendant Orlans PC's Motion to Dismiss ("Orlans Mot."), ECF No. 64; (4) Reverse Mortgage Solutions and Federal National Mortgage Association's Motion to Dismiss Plaintiff's Third Amended Complaint ("RMS Mot."), ECF No. 66; and (5) Bank of America's Motion to Dismiss Plaintiff's Third Amended Complaint ("BOA Mot."), ECF No. 67.  Generally, Defendants assert that Plaintiff's suit is barred by the statute of limitations, *res judicata*, and the *Rooker-*

---

[12]   Plaintiff's title for this count reads as Count IV, but it follows Count VI.  Third Am. Compl. at 59.

7

*Feldman* doctrine,[13] and fails to state a claim, and they seek dismissal with prejudice. RMA and Orlans also specifically assert that they are not proper parties to this lawsuit. *See* RMA Mot. Mem. 5-6, ECF No. 58-1 (noting that it is a separate company from Academy Mortgage that was formed years after the subject transaction); Orlans Mot. Mem. 5-6, ECF No. 64-1 (noting that it only became involved in any part of the foreclosure action as counsel for Fannie Mae after the sale had been ratified).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Civil Action No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*).

---

[13]    In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), the Supreme Court formulated a general rule that distinguishes general constitutional challenges to state laws and regulations, over which federal courts have jurisdiction, from requests for review of specific state court decisions, over which they have no jurisdiction. Federal claims that are "inextricably intertwined with" state court decisions in judicial proceedings fall outside of the federal court's jurisdiction. *See Feldman*, 460 U.S. at 486-87.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). A court may also take judicial notice of matters of public record. *Secretary of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011). However, if the Court considers matters outside the pleadings, the Court must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, No. RDB-12-318, 2013 WL 139194, at *2 (D. Md. Jan. 10, 2013).[14]

All claims rooted in fraud allegations are subject to a heightened pleading standard. Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). Such allegations of fraud

---

[14] Here, I have not considered matters other than the pleadings, documents that are referenced in the pleadings and are integral to it, and documents for which the Court may take judicial notice, and I have not considered RMA's motion under the alternative summary judgment standard.

9

typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013) (quoting *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 313-14 (D. Md. 2000)).

## DISCUSSION

Defendants argue that Plaintiff's claims fail because they are barred by *res judicata* due to the ratification of the foreclosure sale. Cohn Mot. Mem. 10-11, ECF No. 62-1; Orlans Mot. Mem. 8-9, ECF No. 64-1; RMS Mot. Mem. 6-10, ECF No. 66-1; BOA Mot. Mem. 10-11, ECF No. 67-1; *see also* RMA Reply 1-2, ECF No. 84 (joining and adopting the other Defendants' replies). *Res judicata* "bars a party from suing on a claim that has already been litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action." *Reid v. New Century Mortg. Corp.*, No. AW-12-2083, 2012 WL 6562887, at *3 (D. Md. Dec. 13, 2012) (quoting *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009)) (citations omitted). When considering this defense, "a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact." *Kalos v. Centennial Sur. Assocs., Inc.*, No. CCB–12–1532, 2012 WL 6210117, at *2 (D. Md. Dec. 12, 2012) (quoting *Andrews v. Daw*, 201 F.3d 521, 524 n. 1 (4th Cir. 2000). And, when a federal court litigant asserts *res judicata* based on a state court judgment, "[the] federal court must give to [the] state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

10

Under Maryland law, *res judicata*, or claim preclusion,[15] provides grounds for dismissal if a defendant establishes that "(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been determined in prior litigation; and (3) there was a final judgment on the merits in the prior litigation." *Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640, 643-44, 2011 WL 3734984, at *3 (4th Cir. 2011) (quoting *R & D 2001, LLC v. Rice*, 938 A.2d 839, 848 (2008)).

**I.     The same parties**

"Privity in the *res judicata* sense generally involves a person so identified in interest with another that he represents the same legal right." *Jones v. HSBC Bank USA, N.A.*, No. RWT 09CV2904, 2011 WL 382371, at *5 (D. Md. Feb. 3, 2011) (quoting *Anyanwutaku v. Fleet Mortgage Group, Inc.,* 85 F. Supp. 2d 566, 572–73 (D. Md. 2000)). Plaintiff agrees that RMS, Orlans, and Fannie Mae are in privity with the substitute trustee. Resp. Orlans 8, ECF No. 76; Resp. RMS 7-8, ECF No. 78. Although she does not explain why, Plaintiff disputes that Diane Vest and Rene Lafayette are in privity with the Cohn Defendants[16], who were appointed as substitute trustee for the foreclosure proceeding. Resp. Cohn 8, ECF No. 75. Also, with no argument or explanation, she disputes that BOA is in privity with the substitute trustee and Fannie Mae. Resp. 7, ECF No. 74.

---

[15]    More specifically, "the doctrine of *res judicata* encompasses two concepts: claim preclusion, which bars later litigation of all claims that were actually adjudicated or that could have been adjudicated in an earlier action, and issue preclusion, which bars later litigation of legal and factual issues that were 'actually and necessarily determined' in an earlier action." *Covert v. LVNV Funding, LLC*, 779 F.3d 242, 246 (4th Cir. 2015) (quoting *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996)).

[16]    In their motion, and herein, Mr. Cohn, the Substitute Trustees, and Cohn, Goldberg & Deutsch, LLC are collectively referred to as the "Cohn Defendants." *See* Cohn Mot. 1 n.1.

11

With regard to Ms. Vest and Ms. Lafayette, Plaintiff alleged that Ms. Vest prepared an appraisal of the Property at the direction of RMS and/or Mr. Cohn.  Third Am. Compl. ¶ 41. Plaintiff asserts that the mortgage originators, appraisers, financial institutions, HUD, and Fannie Mae were all a part of the conspiracy in this allegedly wrongful foreclosure.  *Id.*  ¶¶ 126-32; *see also* ¶ 112 ("Defendant appraisers, loan providers and loan servicers, hand-in-hand with one another, actively concealed and/or conspired to conceal the fact that their ultimate intent and goal was to foreclose on the Property . . . .").  Ms. Lafayette audited the foreclosure sale, and Plaintiff alleges that she "knew or should have known the foreclosure against the real property was wrongful and that the reverse mortgage loan that was the subject of the foreclosure was not a valid loan." *Id.* at ¶ 144.  BOA was the predecessor to RMS, whom Plaintiff does not dispute is in privity. *See* BOA Ex. D, BOA Assignment, ECF No. 67-5, 67-6.

Plaintiff offers no reasoning or authority to support her conclusory claim that these defendants are not in privity for the purposes of this analysis, and it is clear that the parties in this suit are either the same or in privity.[17]  Therefore, I find that the first element of claim preclusion has been satisfied.  *See Jones*, 2011 WL 382371, at *5 (finding that "because all defendants share a mutuality of interest with respect to the validity of the foreclosure judgment, the first element of the claim preclusion test is met").

## II. The same claims

Under Maryland law, courts apply the transaction test to determine whether claims are identical. *See Kent Cnty. Bd. of Educ. v. Bilbrough*, 525 A.2d 232, 238 (Md. 1987). "Under the

---

[17] I note that Plaintiff has alleged that Marcia Fudge, Secretary of HUD, was a party to the reverse mortgage transaction, Third Am. Compl. ¶¶ 13-16, which means she also is in privity for purposes of the claim preclusion analysis.  Defendants Joseph DiPietro and Scott Cuthbert were appraisers who provided appraisals as part of the transaction at issue, *id.* ¶¶ 36-44, and thus qualify similarly to Ms. Vest.  Academy Mortgage assigned the Deed of Trust on August 7, 2003, the day of closing, to Seattle Mortgage, making it also a predecessor to RMS, whom Plaintiff does not dispute is in privity.

12

transaction test, a 'claim' includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the claim arose." *Boyd v. Bowen*, 806 A.2d 314, 325 (Md. Ct. Spec. App. 2002) (citing *FWB Bank v. Richman*, 731 A.2d 916, 928 (Md. 1999)). Accordingly, under Maryland law, for *res judicata* purposes, the transaction test is quite broad, barring not only claims from the original litigation, but also other claims that could have been brought in the original litigation. *Id.* at 326 (citing *Gertz v. Anne Arundel Cnty.*, 661 A.2d 1157, 1161 (Md. 1995)). And, if a claim or defense arose from the same series of transactions as the claim that was adjudicated, it may be precluded even if it was not asserted. *Skibicki v. Fairmont Plaza*, PWG-17-1366, 2018 WL 3862252, at *3 (D. Md. Aug. 14, 2018).

Here, Plaintiff concedes that she previously alleged the same facts and presented the same issues in prior litigation including the foreclosure case, but she argues that she should not be held to the same standard because she was a *pro se* litigant without the benefit of counsel. Resp. Cohn 9-10; Resp. Orlans 8-9; Resp. RMS 8-9; Resp. BOA 7-8. Plaintiff also argues that she is not barred from a cause of action for fraud and negligent misrepresentation, and her current claims differ because they are not brought as a collateral attack on the foreclosure sale but rather as a direct attack on the validity of the reverse mortgage itself. Resp. Cohn 9-11; Resp. Orlans 9-10; Resp. RMS 9-10; Resp. BOA 8-9. Plaintiff cites *Jones v. Rosenberg*, 940 A.2d 1109, (Md. Ct. Spec. App. 2008) to support her position that fraud or illegality is an exception to final ratification of a foreclosure being *res judicata*. *Id.*

Certainly, "not all claims raised in a subsequent suit that arise out of the same transaction or series of transactions at issue in a prior suit are barred." *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 801 (D. Md. 2013). In *Currie*, the court determined that it was plausible that the

relief requested by the plaintiff in the Maryland Mortgage Fraud Protection Act claim would not contradict or nullify "an essential foundation of the foreclosure judgment." *Id.* at 801-802 (citing *Fairfax Sav., F.S.B. v. Kris Jen Ltd. P'ship*, 655 A.2d 1265, 1280 (Md. 1995) and discussing whether an issue raised but not litigated is precluded by collateral estoppel[18]). Here, however, the validity of the reverse mortgage loan and Deed of Trust were an "essential foundation" of the Circuit Court's foreclosure judgment, and Plaintiff's allegations contradict and seek to nullify the loan and the foreclosure. Plaintiff appeared and raised these same allegations of fraud, misrepresentation, and improprieties related to the appraisals and assignments in the foreclosure proceedings, in her exceptions to the foreclosure sale seeking a stay of ratification, and in her motion to stay the foreclosure sale and motion to dismiss. *See* Cohn Mot. Ex. 2, Mot. Stay, ECF No. 62-3; Cohn Mot. Ex. 3, Exception, ECF No. 62-4. The court denied her motions. Cohn Mot. Ex. 4, Circuit Court Opinion, ECF No. 62.5; RMS Mot. Ex. C, Order Dismiss, ECF No. 66-5.

In *Jones v. HSBC Bank*, Jones also had voluntarily appeared and raised numerous objections in the foreclosure action, but then chose not to appeal or seek revision of the state-court decision. 444 F. App'x at 645. The *Jones* court held that the state-court foreclosure constituted an *in personam* final judgment on the merits, which precluded Jones from raising the same claims. *Id.* Jones also argued that Maryland's permissive counterclaim rules insulate from preclusion the claims that Jones could have raised but did not, but the court concluded that "to allow them in this case would, in effect, nullify the original foreclosure judgment. Avoiding such a consequence is a central concern of the claim preclusion doctrine." *Id.* at 644 n.3. *See also Bullock v. Ocwen Loan*

---

[18] Collateral estoppel is a term that refers to issue preclusion, which is a sub-species of *res judicata* that applies when a party raises in a successive lawsuit "an issue of fact or law actually litigated and resolved in a valid court determination essential to [a] prior judgment" and that party had "a full and fair opportunity to litigate," even if the issue "recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

*Servicing, LLC*, Civil No. PJM 14–3836, 2015 WL 5008773, at *6 (D. Md. Aug. 20, 2015) (barring the plaintiff's debt collection and consumer protection claims by *res judicata* because they could have been asserted as counterclaims in the foreclosure action); *Anyanwutaku*, 85 F. Supp. 2d at 571-72 (describing the factors that courts consider when deciding whether claims are part of the same cause of action and concluding that the fraud and misrepresentation issues could have been raised in the foreclosure proceeding).

Further, the court's discussion in *Jones v. Rosenberg* regarding the fraud exception is not helpful to Plaintiff because it refers to extrinsic or collateral fraud. 940 A.2d at 1119. The court reinforced the importance of finality, explaining:

> An enrolled decree will not be vacated even though obtained by the use of forged documents, perjured testimony, or any other frauds which are "intrinsic" to the trial of the case itself. Underlying this long settled rule is the principle that, once parties have had the opportunity to present before a court a matter for investigation and determination, and once the decision has been rendered and the litigants, if they so choose, have exhausted every means of reviewing it, the public policy of this State demands that there be an end to that litigation. This policy favoring finality and conclusiveness can be outweighed only by a showing "that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy. Fraud is extrinsic when it actually prevents an adversarial trial . . . ."

*Id.* (citations omitted and cleaned up). Plaintiff has not identified the existence of any extrinsic or collateral fraud, nor has she alleged that she was prevented from litigating her claims.

Finally, although Plaintiff is represented by counsel in this case, she represented herself in most of the foreclosure proceedings and prior lawsuits, and she argues that as a result, "it is not fair to judge her harshly." Resp. Cohn 9-10; Resp. Orlans 8-9; Resp. RMS 8-9; Resp. BOA 7-8. While I am mindful of the importance of holding *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Plaintiff has

15

been provided multiple opportunities to develop her case (in state court, bankruptcy court, and this court) and has succeeded in none of them, and I cannot ignore the lack of a cognizable legal theory. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Turner v. Kight*, 192 F. Supp. 2d 391, 398 (D. Md. 2002); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).  Because Plaintiff is asserting claims that arise out of the same transaction as the claims resolved by the state court judgment ratifying the foreclosure sale, the claims are the same for purposes of *res judicata*.

### III.     A final judgment on the merits

The ratification of the sale in a foreclosure action is a final judgment on the merits.  *See, e.g., Gordon v. Nationstar Mortgage LLC*, No. CIV. RWT 14-1361, 2015 WL 5165453, at *1 n.6 (D. Md. Sept. 2, 2015) (noting that "most cases applying Maryland law identify ratification of the sale as the final judgment in a foreclosure action") (citing cases).  Nevertheless, Plaintiff contends that in this case, the ratification of the foreclosure sale is not a final judgment because the claims differ.   Resp. Cohn 11; Resp. Orlans 11; Resp. RMS 11; Resp. BOA 10.  As discussed above, the state court foreclosure action and the present case relate to the same transaction, and Plaintiff's claims either were, or could have been, raised and determined in the foreclosure proceeding.  The state court ratified the foreclosure sale, and Plaintiff's appeals post-ratification were dismissed.  Third Am. Compl. ¶¶ 57-58; Foreclosure Docket 23-24.  As such, I find that there has been a final judgment on the merits.

### IV.     Dismissal with prejudice

All three elements of *res judicata* have been met.  Therefore, Plaintiff's claims are precluded, and I will dismiss this case without reaching the various alternative grounds Defendants raised for dismissal. Defendants' motions shall be granted, and Plaintiff's claims shall be dismissed with prejudice.  Dismissal includes the claims asserted against Mr. Cuthbert, Mr. DiPietro, Ms.

Fudge, and Seattle Mortgage Company, although they did not join the dismissal motions. As noted above, these Defendants qualified as the same parties or in privity, and *res judicata* bars Plaintiff from asserting the same claims against them. It would be futile to allow further amendment, and preventing needless litigation promotes judicial economy. *See Clodfelter v. Republic of Sudan*, 720 F.3d 199, 208 (4th Cir. 2013) ("A district court may invoke the doctrine of *res judicata* in the interests of, *inter alia*, the promotion of judicial economy." (citing cases)).

## ORDER

Accordingly, it is, this 5th day of July 2022, hereby ORDERED that

1. Motion to Dismiss Plaintiff's Third Amended Complaint or, in the Alternative, for Summary Judgment by Defendant Reverse Mortgage Answers, LLC, ECF No. 58, is GRANTED;

2. Defendants Edward S. Cohn, *et al.*, Substitute Trustees, Cohn, Goldberg & Deutsch, LC, Appraiser Diane Vest, Renee Lafayette, and Lafayette Law Office, LLC's Motion to Dismiss Third Amended Complaint, ECF No. 62, is GRANTED;

3. Defendant Orlans PC's Motion to Dismiss, ECF No. 64, is GRANTED;

4. Reverse Mortgage Solutions and Federal National Mortgage Association's Motion to Dismiss Plaintiff's Third Amended Complaint, ECF No. 66, is GRANTED;

5. Bank of America's Motion to Dismiss Plaintiff's Third Amended Complaint, ECF No. 67, is GRANTED;

6. Plaintiff's Third Amended Complaint, ECF No. 53, is DISMISSED WITH PREJUDICE; and

7. The Clerk is directed to CLOSE this case.

_____/S/_____
Paul W. Grimm
United States District Judge